# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE VAN NGO,<br>        Plaintiff,<br>v.<br>ANDREW SAUL,<br>Commissioner of Social Security<br>Administration,<br>        Defendant. | CIVIL ACTION<br>NO. 4:18-40008-TSH |

### ORDER AND MEMORANDUM PLAINTIFF'S MOTION TO REVERSE THE COMMISSIONER'S DECISION AND THE COMMISSIONER'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION (Docket Nos. 12 & 13)

**November 12, 2019**

**HILLMAN, D.J.**

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") denying the application of The Van Ngo ("Plaintiff") for Social Security Disability Insurance Benefits because Plaintiff was not disabled. 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff filed a motion to reverse this decision (Docket No. 12). The Commissioner filed a cross-motion seeking affirmance (Docket No. 13). For the reasons below, the Court ***grants*** the Commissioner's motion and ***denies*** Plaintiff's motion.

### Background

*1. Medical History*

Plaintiff sustained an injury to his right arm in a workplace accident on August 30, 2011. Doctors diagnosed him with right elbow lateral epicondylitis, and he underwent surgery on February 12, 2012. At a follow-up appointment on February 24, 2019, Thomas Breen, MD ("Dr.

Breen") noted that Plaintiff was doing well. (AR[1] 688). In Plaintiff's next few visits, however, Plaintiff complained to Dr. Breen about stiffness. (AR 686–87).

On May 2, 2012, Plaintiff met with Hillel Skoff, MD ("Dr. Skoff"), a hand, wrist, elbow, and shoulder specialist. Dr. Skoff did not observe any visual abnormalities on the shoulder or discoloration on Plaintiff's skin, but he did find that Plaintiff had gross loss of motion to the right shoulder and a severely weak grip. (AR 890). Dr. Skoff expressed no opinion on whether Plaintiff was permanently impaired, but he reported that Plaintiff was totally disabled from holding any occupation. (AR 890–91).

On May 3, 2012, Dr. Breen noted that Plaintiff had less pain but was very stiff. (AR 685). Dr. Breen recommended that Plaintiff continue with occupational therapy, which he had begun in April. (AR 685). On May 17, 2012, and June 21, 2012, Dr. Breen reported Plaintiff's range of motion had improved as a result of therapy. (AR 683–84). By August 12, 2012, however, Plaintiff had stopped receiving therapy, and Dr. Breen noted a more limited range of motion in the elbow joint. (AR 682). He recommended manipulation under anesthesia. (AR 682).

Shawn Channell, PhD ("Dr. Channell") performed a consultative examination on Plaintiff on July 3, 2012. According to Dr. Channell, Plaintiff displayed full affect and had intact attention and concentration. But Dr. Channell noted that Plaintiff described his mood as "stressed" and acknowledged recent suicidal thoughts. (AR 608–09). Dr. Channell diagnosed Plaintiff with adjustment disorder with depressed mood. (AR 609). But Dr. Channell did not

---

[1] A transcript of the Social Security Administration Official Record ("AR") has been filed with the court under seal. (Docket No. 9). Citations to the AR page numbers are those assigned by the agency and appear on the lower right-hand corner of each page.

expect Plaintiff's symptoms to impact his ability to work and opined that they would improve as Plaintiff's physical condition improved. (AR 609).

On July 12, 2012, Mark Cutler, MD ("Dr. Cutler") performed a psychiatric examination on Plaintiff. Dr. Cutler diagnosed Plaintiff with pain disorder and depressive disorder and opined that he was totally disabled from any occupation. (AR 929–30). Dr. Cutler reiterated these findings in a November 5, 2012, examination. (AR 933).

In July 2012, Robert McGan, MD ("Dr. McGan"), a state physician, examined Plaintiff. Dr. McGan opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and could handle objects with his right arm occasionally.

In September 23, 2012, assessment, Iris Sullivan, MD ("Dr. Sullivan") reported that Plaintiff had no medical history of any nervous condition, was attentive to his personal appearance, got along with others, and had no problems with memory or concentration. (AR 696). Dr. Sullivan also reported that Plaintiff had not regained major function with respect to his right elbow lateral epicondylitis. (AR 698).

In January 2013, Elaine Hom, MD ("Dr. Hom"), a state physician, examined Plaintiff. Dr. Hom opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and could handle objects with his right arm occasionally. Dr. Hom also stated that, despite Plaintiff's pain and reduced range of motion, he could reach overhead, turn, and twist with his right arm occasionally.

On March 22, 2013, Dr. Skoff examined Plaintiff. Dr. Skoff observed that Plaintiff had a limited range of motion in his right arm, atrophy in his right shoulder, and poor grip strength in his right hand. (AR 893). Dr. Skoff rated Plaintiff has 75% impaired with respect to his right upper extremity and 45% impaired overall. (AR 894). He opined that "[i]t is unclear to this

3

observer whether any specific occupation would fit within this patient's current capabilities." (AR 894).

In March 26, 2013, assessment, Fred Burke MS PT ("Mr. Burke") stated that Plaintiff was limited to sedentary work. Mr. Burke indicated that Plaintiff could lift 10 pounds occasionally but could not lift, carry, pull, or otherwise move objects.

On April 20, 2013, Charles Kenny, MD ("Dr. Kenny") examined Plaintiff. He observed a limited range of motion in the right arm, the inability to make a fist, swelling, and reddish and brownish discoloration in the area around the right lateral epicondyle. (AR 773). Dr. Kenny opined that Plaintiff could only perform sedentary work, with occasional lifting of 10 pound and no activities above waist level. (AR 776).

Dr. Cutler examined Plaintiff again on July 23, 2013, November 18, 2013, and February 10, 2014. Dr. Cutler observed a markedly depressed mood and found Plaintiff totally disabled from performing any work. (AR 936–37, 940–41, 944–45).

Dr. Skoff examined Plaintiff on August 21, 2013 and January 23, 2014. Dr. Skoff noted that Plaintiff had a limited range of motion, could not make a fist, and had only 25% of the grip strength of the contralateral side. (AR 896, 899–900). He again rated Plaintiff as 75% impaired with respect to the right upper extremity and 45% impaired overall. (AR 897, 900).

On December 23, 2013, Katherine Riggert DO ("Dr. Riggert") examined Plaintiff. She diagnosed Plaintiff with right elbow pain, right shoulder adhesive capsulitis, and likely chronic regional pain syndrome. (AR 885). And she opined that Plaintiff could not perform simple grasping, turning, fine manipulation, or reaching motions; lift or carry any weight with the right upper extremity; or climb ladders, stairs, or scaffolds. (AR 885–86). She also suggested that Plaintiff would perform a job at less than 50% efficiency. (AR 886).

Plaintiff met with Barbara Sullivan, FNP ("NP Sullivan") on February 5, 2014. Plaintiff complained that his fluoxetine had not helped his depression and that his right hand felt "different." (AR 983). NP Sullivan noted the Plaintiff had a depressed mood, anhedonia, and feelings of hopelessness, although no suicidal ideation. (AR 983).

In a February 6, 2014, assessment, Dr. Cutler rated Plaintiff as markedly limited in the ability to maintain concentration and regularly attend work and moderately limited in the ability to work with others and interact appropriately in public. (AR 949). He opined that Plaintiff would be off-task 25% of the time, would miss 3 days of work a month, and would perform at 40% efficiency. (AR 950).

On April 3, 2014, June 18, 2014, and August 20, 2014, NP Sullivan observed Plaintiff in moderate distress and significant pain. (AR 967, 971, 979). On November 19, 2014, Plaintiff informed NP Sullivan that he might have found a job at a Vietnamese restaurant. (AR 954). He showed mild distress due to pain on examination, and NP Sullivan noted that he had right muscle wasting, a limited range of motion, and a depressed affect. (AR 955).

Plaintiff met with Kristen Jettinghoff, LMHC ("Ms. Jettinghoff") on March 2, 2015, for mental health services. Plaintiff complained to her of racing thoughts, difficulties concentrating, lack of energy, and depression. (AR 1130). Ms. Jettinghoff described his mood as depressed and diagnosed Plaintiff with a mood disorder. (AR 1132–33).

On March 16, 2015, NP Sullivan noted that Plaintiff appeared in moderate distress and showed signs of a depressed and anxious mood. (AR 1077). She also observed atrophy and weakness of the muscles in Plaintiff's right arm. (AR 1078). Plaintiff reported to her that his pain was 5 to 6 out of 10 during the day and increased to 8 out of 10 at night. (AR 1077).

Dr. Cutler met with Plaintiff on April 6, 2015, and recorded Plaintiff's mood as markedly depressed. (AR 996).

On April 6, 2015, Harvey Clermont, MD ("Dr. Clermont") examined Plaintiff. Dr. Clermont observed discoloration of the skin on Plaintiff's right arm, limited range of motion in the right shoulder, Plaintiff's inability to make a fist with his right hand, and a slight tremor in Plaintiff's right arm that worsened with activity. (AR 1007–08). In an April 7, 2015, assessment, Dr. Clermont opined that Plaintiff could not lift, carry, or manipulate objects with his right arm; could only lift, carry, or manipulate with his left hand 50% of the time; and would be off-task at least 25% of the time in an eight-hour day. (AR 999–1001).

In her April 7, 2015, examination of Plaintiff, Ms. Jettinghoff reported that Plaintiff had a euthymic mood with appropriate affect. (AR 1138).

Lloyd Alderson, MD ("Dr. Alderson") met with Plaintiff several times between April 2015 and May 2016. Dr. Alderson's treatment records show improvements in Plaintiff's grip and muscle strength over time. (AR 1022–24, 1066–68, 1171–76). Dr. Alderson also reported that Plaintiff had normal skin tone and color without a lot of wasting. (AR 1172, 1173). In his August 22, 2015, assessment, Dr. Alderson opined that that Plaintiff could not use his right hand to lift or carry any weight; grasp, turn, or twist objects; perform fine manipulation of objects; or reach in front of his body or overhead. (AR 1019).

On June 12, 2015, James Todd, MD ("Dr. Todd") examined Plaintiff. Plaintiff complained of stiffness, limited range of motion, inability to lift or carry, and a burning, pinching, and squeezing pressure in his right arm. (AR 1012). Dr. Todd observed tenderness at the nerve root outlets at the C5, C6, and C7 vertebrae and weakness in Plaintiff's thumb, index finger, and grip. (AR 1012). Dr. Todd diagnosed Plaintiff with complex regional pain

6

syndrome, decreased range of motion, muscle stiffness, and allodynia of the right elbow. (AR 1012). On June 19, 2015, Dr. Todd amended his report to opine that Plaintiff was permanently disabled from any work. (AR 1014).

On June 30, 2015, NP Sullivan observed Plaintiff in moderate distress with a depressed affect. (AR 1060). On August 24, 2015, NP Sullivan again noted that Plaintiff appeared to be in distress, but she also reported that Plaintiff was more engaged in his care. (AR 1040–41).

On July 1, 2015, Plaintiff complained of depression to Ms. Jettinghoff. (AR 1144). Ms. Jettinghoff, however, recorded his mood as euthymic mood with a flat affect. (AR 1144–45). A month later, on August 19, 2015, Gleidistoney DeOliveira, PCNS ("Ms. DeOliveira") recorded his mood as depressed with a constricted affect. (AR 1099).

From November 2015 through April 2016, Ms. DeOliveira and Ms. Jettinghoff observed Plaintiff variously with a euthymic mood with subdued affect, a euthymic mood with full affect, a dysthymic mood with full affect, and a depressed and irritable mood. (AR 1100–29, 1150–65).

On February 3, 2016, Christian Sampson, MD ("Dr. Sampson") examined Plaintiff. Dr. Sampson reported limited range of motion, no acute distress, and intact sensory capability. (AR 1090). Dr. Sampson diagnosed Plaintiff with regional pain syndrome and opined that Plaintiff likely would not have any effective use of his right arm and would be limited to very light or sedentary work with his left, non-dominant hand. (AR 1091).

On July 11, 2016, Dr. Cutler examined Plaintiff once more. Plaintiff complained of continued pain, depression, decreased sleep, anhedonia, and social withdrawal. (AR 1181). Plaintiff also reported that he had made little progress in his treatment sessions with Ms. Jettinghoff and Ms. DeOliveira. (AR 1181). Dr. Cutler recorded his mood as markedly depressed and opined that he was totally disabled from any work. (AR 1181–82).

7

*2. Procedural History*

Plaintiff filed for disability benefits under Titles II and XVIII of the Social Security Act on May 11, 2012, alleging that he became disabled on September 27, 2011, due to lower back pain, anxiety, depression, neck pain, problems with his right elbow and left shoulder, diabetes, cholesterol, and liver disease. (AR 301–04, 338). The Social Security Administration denied his claim at the initial and reconsideration levels. (AR 121–42, 178–85). Plaintiff requested and received an administrative hearing. (AR 84–119). After the hearing, Administrative Law Judge Kim K. Griswold ("ALJ") concluded that Plaintiff was not disabled. (AR 143–70).

The Appeals Council granted Plaintiff's Request for Review and returned the case to the ALJ. (AR 171–75, 250–55). Following another hearing (AR 58–83), the ALJ again determined that Plaintiff was not disabled. (AR 12–57). The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied review. (AR 1–5).

*3. The ALJ's Findings*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2011, his alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff had the following severe impairments: complex regional pain syndrome of the right upper extremity, right shoulder adhesive capsulitis, and depressive disorder. (AR 18–34). At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 34–36). Next, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b), except that

> [C]laimant can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently with the left, nondominant upper extremity. The claimant cannot perform lifting or carrying with the right dominant upper extremity except for up to 2 pounds or less. He cannot perform overhead reaching with the right dominant upper extremity. He

can perform frequent (not constant) handling and fingering with the right dominant upper extremity. The claimant has no limits with handling or fingering with the left upper extremity. The claimant can occasionally crouch, kneel, balance, and climb ramps and stairs. He has no limits in stooping (bending at the waist), but he cannot climb ladders, ropes, or scaffolds, or crawl. The claimant cannot tolerate exposure to hazards such as dangerous moving machinery and unprotected heights. He can understand, remember, and carry out simple instructions throughout an ordinary workday and work week with normal breaks on a sustained basis. He cannot tolerate contact with the general public. He can tolerate occasional and superficial contact with coworkers for simple work-related matters. He can adapt to simple and occasional change and make simple and occasional decisions in the routine work setting.

(AR 36). At step four, the ALJ found that Plaintiff could not do his past relevant work as a covering machine operator. (AR 48). At step five, the ALJ found that Plaintiff was not disabled because he could still perform a significant number of other jobs, i.e., packaging, inspector, and machine handling sorter. (AR 49–50).

## Standard of Review

This Court may not disturb the Commissioner's decision if it is grounded in substantial evidence. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence exists when there is enough evidence that a reasonable person could agree with the Commissioner's conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). Thus, this Court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion, even if the administrative record could support multiple conclusions." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quotation marks and citation omitted).

## Standard of Entitlement to Social Security Disability Insurance

A claimant is disabled for purposes of SSDI if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Unable to engage in any substantial gainful activity" means the claimant

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Commissioner assesses a claimant's impairment under a "five-step sequential evaluation process" outlined in the statute. *See* 20 C.F.R. § 404.1520. Under this process, the hearing officer must decide: (1) whether the claimant is engaged in "substantial gainful activity"; (2) whether the claimant suffers from a "severe impairment"; (3) whether the impairment "meets or equals" one of the listed impairments contained in Appendix 1 to the regulations; (4) whether the claimant's residual functional capacity ("RFC")[2] precludes him from engaging in previous relevant employment; and (5) whether the claimant's RFC precludes him from doing any work considering the claimant's age, education, and work experience. *See id.* If the hearing officer concludes at any step of the evaluation process that the claimant is not disabled, the inquiry does not continue to the next step. *See* 20 C.F.R. § 404.1520.

The claimant has the burden of showing that he is disabled through step four of the analysis. At step five, however, the burden shifts to the Commissioner who must show that there

---

[2] Before proceeding to steps four and five, the Commissioner must assess the claimant's RFC, which the Commissioner applies at step four to determine whether the claimant can perform past relevant work and at step five to determine if the claimant can perform any other work. *See* 20 C.F.R. § 404.1520. "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

are jobs in the national economy the claimant can perform notwithstanding his impairments. *See Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

## Discussion

*1. Weight Given to Treating Opinions in Determining Physical RFC*

Plaintiff contends that the ALJ's assessment of the medical evidence was flawed. (Docket No. 12 at 13). He argues that the ALJ did not give appropriate weight to the opinions offered by his treating physicians.

An ALJ must generally give more weight to the opinions of treating physicians than non-treating physicians. 20 C.F.R. § 404.1527(c)(1); 416.927(c)(1); *see also Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 240 n. 9 (1st Cir. 2010) ("[T]reating physicians' opinions are ordinarily accorded deference in Social Security disability proceedings."). Thus, if a treating source opinion is well-supported by objective evidence and consistent with the record, the ALJ must accord it "controlling weight." 20 C.F.R. § 404.1527(c)(2). If a treating source opinion contradicts the record, however, the ALJ must evaluate the opinion "against six criteria in order to fulfill the mandate that the ALJ 'always give good reasons' when determining the weight a treating opinion deserves." *Santana v. Colvin*, 2016 WL 7428223, at *3 (D. Mass. Dec. 23, 2016); *see also* 20 C.F.R. § 404.1527(c) (identifying six relevant criteria which tend to support or contradict a medical opinion).

An ALJ is "entitled to resolve conflicts in the record, and may reject the opinion of the treating physician so long as an explanation is provided and the contrary finding is supported by substantial evidence." *Tetreault v. Astrue*, 865 F. Supp. 2d 116. 125 (D. Mass. 2012) (citations and internal quotation marks omitted); *see also Keating v. Sec'y of Health & Human Services*, 848 F.2d 271, 276 (1st Cir. 1988) ("A treating physician's conclusions regarding total disability may

be rejected by the Secretary especially when, as here, contradictory medical advisor evidence appears in the record."); *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) ("The relevant regulations further permit the ALJ to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where, as here, it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians."). However, an ALJ may not simply disregard relevant evidence, particularly when that evidence bolsters the claimant's entitlement to benefits. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion."); *Dedis v. Chater*, 956 F. Supp. 45, 51 (D. Mass 1997) ("While the ALJ is free to make a finding which gives less credence to certain evidence, he cannot simply ignore . . . the body of evidence opposed to [his] view." (citations and internal quotation marks omitted)).

Moreover, "even when an ALJ does provide reasons for discounting a treating source opinion, remand is proper if those reasons are 'unpersuasive' or 'significantly flawed.'" *Santana v. Colvin*, 2016 WL 7428223, at *3 (quoting *Johnson v. Astrue*, 597 F.3d 409, 411–12 (1st Cir. 2009)). According to agency policy, the "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (emphasis added). "These rules are not formalities. They are intended to allow 'claimants [to] understand the disposition of their cases,' and provide a reviewing court with an adequate record to review disability determinations." *Perry v. Colvin*, 91 F. Supp. 3d 139, 152 (D. Mass. 2015) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

*a. Dr. Sampson*

Plaintiff contends that the ALJ failed to weight the opinion of Dr. Sampson. (Docket No. 12 at 3). The Court agrees. Although the ALJ mentioned Dr. Sampson's examination in discounting several other opinions, e.g. NP Sullivan's observation that Plaintiff was in mild to moderate distress (AR 39), the ALJ failed to identify to what extent she otherwise credited his opinion. But while the failure to consider a medical opinion in the record may constitute error, *see* § 404.1527(b), Plaintiff has not shown that this error prejudiced his case. *See Smith v. Berryhill*, 370 F. Supp. 3d 282, 289 (D. Mass. 2019) ("Plaintiff does not specify how she prejudiced by this more restrictive RFC, insofar as there is any error on the part of the ALJ, it is harmless."). Dr. Sampson stated that Plaintiff has a "permanent partial disability" and that "[i]t is highly unlikely that this patient will have any effective use of his right upper extremity." But he also stated that Plaintiff "would be able to perform very light duty or sedentary office space activities with his left, nondominant upper extremity." (AR 1091). This opinion is consistent with the ALJ's determination that Plaintiff could perform light work with his left arm but could not use his right arm to lift over 2 pounds or reach overhead.

*b. Dr. Alderson*

Plaintiff challenges the ALJ's decision not to credit Dr. Alderson's August 22, 2015, assessment. (Docket No. 12 at 5). In the August 22 assessment, Dr. Alderson noted that Plaintiff suffers from RSD and opined that Plaintiff could not use his right hand to lift or carry any weight; grasp, turn, or twist objects; perform fine manipulation of objects; or reach in front of his body or overhead. (AR 1019). The ALJ afforded it little weight because she found that it

unsubstantiated.³ (AR 43). Substantial evidence supports this determination. First, as the ALJ noted, Dr. Alderson did not himself observe the sweating, changes in skin color, or involuntary movements he mentioned in the assessment. (AR 43). And while he clearly was aware of some issue with discoloration given the consistency with which he observed Plaintiff's skin tone (AR 1172, 1173), the ALJ did not err in affording his assessment less weight because he relied on second-hand information. Second, Dr. Alderson's records suggest mild improvement over time and thus conflict with his August 22 assessment. For example, before Dr. Alderson began treatment, Dr. Clermont reported "increased sweating" and "changes in the temperature and color of the arm." (AR 1008). Dr. Alderson, however, consistently observed normal skin tone and no signs of swelling or discoloration. (AR 1172, 1173). Dr. Clermont also reported that general weakness "throughout the right upper extremity" and a "fine tremor." (AR 1008). Dr. Alderson's records, however, show increases in the strength of Plaintiff's grip, biceps, and triceps from April 2015 through May 2016. (AR 1171–75).

### c. Dr. Kenny and Mr. Burke

Plaintiff disagrees with the weight accorded to Dr. Kenny's opinion because the ALJ allegedly "overlook[ed] Dr. Kenny's documentation of Plaintiff's near complete inability to use his right upper extremity." (Docket No. 12 at 7). But the ALJ only rejected Dr. Kenny's opinion that Plaintiff had general restriction to sedentary work.⁴ (AR 43). The ALJ accepted Dr. Kenny's opinion that Plaintiff was limited to sedentary work with respect to his upper right

---

³ To the extent Plaintiff argues that the ALJ failed to consider the § 404.1572(c) factors, such as specialization, in rejecting Dr. Alderson's August 22, 2015, assessment, the Court declines to reverse. Even assuming the ALJ did commit an error, Plaintiff has not shown prejudice.
⁴ To the extent Plaintiff argues that the ALJ failed to consider the § 404.1572(c) factors, such as specialization, in rejecting this aspect Dr. Kenny's report, the Court declines to reverse. Even assuming the ALJ did commit an error, Plaintiff has not shown prejudice.

14

extremity. (AR 43). And to the extent the ALJ varied from what Dr. Kenny proposed with respect to the right arm, she made Plaintiff's RFC even more limited.[5] Dr. Kenny, for example, opined that Plaintiff could occasionally lift 10 pounds with his right hand (AR 776), but the ALJ reduced lifting to two pounds in Plaintiff's RFC (AR 43).

The ALJ also afforded limited weight to Mr. Burke's opinion because Mr. Burke stated that Plaintiff could only perform sedentary work, even though the record suggests that Plaintiff had no limitations with respect to his left upper extremity or either leg. (AR 45). There is no indication, however, that the ALJ rejected Mr. Burke's opinion regarding Plaintiff's upper right extremity. (AR 45). To the extent the she varied from Mr. Burke's proposal, she made Plaintiff's RFC even more limited than he suggested. (AR 36, 758). Mr. Burke, like Dr. Kenny, opined that Plaintiff could occasionally lift 10 pounds with his right hand (AR 758). The ALJ, however, reduced lifting to two pounds in Plaintiff's RFC. (AR 36).

### d. NP Sullivan and Dr. Clermont

Plaintiff contends that the ALJ erred in according little weight to the opinions of NP Sullivan and Dr. Clermont.[6] (Docket No. 12 at 9). The Court disagrees. NP Sullivan was the only medical professional to report Plaintiff in mild to moderate distress. Drs. Clermont, Todd, Sampson, and Alderson make no mention of distress, except when Plaintiff made certain movements. And treatment records from Dr. Alderson show that the Plaintiff improved from the

---

[5] Plaintiff appears to contend that the ALJ rejected Dr. Kenny's opinion regarding handling, fingering, and reaching. (Docket No. 12 at 7). But while Dr. Kenny noted abnormalities during his examination and generally state that the right arm should only be used occasionally (AR 772–73), he did not opine on any limitations related to handling, fingering, and reaching (AR 776).

[6] To the extent Plaintiff argues that the ALJ failed to consider the § 404.1572(c) factors, such as specialization, in rejecting this aspect Dr. Clermont's report, the Court declines to reverse. Even assuming the ALJ did commit an error, Plaintiff has not shown prejudice.

other symptoms reported by NP Sullivan and Dr. Clermont, e.g., skin wasting, discoloration, limited grip strength.[7] (AR 44, 1172, 1173). Thus, substantial evidence supports the ALJ's decision.

### e. Drs. Todd and Skoff

Plaintiff challenges the little weight accorded to the opinions of Drs. Todd and Skoff.[8] But these opinions do not provide any guidance relevant to the disputed aspects of Plaintiff's RFC. Dr. Todd, for example, lists several symptoms, such as "stiffness, decreased range of motion and lack of ability to carry things and move things with his arm." (AR 1012). Dr. Todd does not indicate, however, how these symptoms would impact Plaintiff's functional limitations, let alone suggest limitations inconsistent with the Plaintiff's RFC as determined by the ALJ. In a similar vein, Dr. Skoff variously reported that Plaintiff experienced pain, loss of motion, and numbness (AR 889); that Plaintiff was "in no acute distress," had 25% grip strength, and a limited range of motion (AR 893–94, 896–97); that Plaintiff was stiff (897); and that Plaintiff had altered sensation. (AR 899). But despite reporting that his limited range of motion would significantly impair his ability to work or perform daily activities of living and opining that Plaintiff is "permanently disabled from returning to his prior position or any job description of a similar nature" (AR 894, 897), Dr. Skoff failed to provide any specific limitations or examples of how Plaintiff's symptoms would impair his functioning in a way not accounted for in the ALJ's determination of RFC.

---

[7] That said, the ALJ did take into consideration NP Sullivan's reports of decreased functioning, wasting, and decreased sensation in reducing Plaintiff's lifting capacity with his right arm to 2 pounds. (AR 40).
[8] To the extent Plaintiff argues that the ALJ failed to consider the § 404.1572(c) factors, such as specialization, in rejecting this aspect these reports, the Court declines to reverse. Even assuming the ALJ did commit an error, Plaintiff has not shown prejudice.

And even if the ALJ had erred in giving any of these opinions limited weight, Plaintiff cannot show prejudice because none of the symptoms reported by these doctors is inconsistent with the ALJ's RFC finding. The ALJ determined that Plaintiff could not lift or carry more than 2 pounds with his right hand; reach overhead with his right hand; climb ladders, ropes, or scaffolds; or crawl. (AR 36). The observed stiffness, pain, and limited range of motion align with this RFC. And while the ALJ found that Plaintiff could finger or handle objects frequently, to the extent any of these doctors observed weak grip strength (AR 36), Dr. Alderson's treatment record indicate that this strength increased over time (AR 1172, 1173).

### f. Dr. Breen

Plaintiff contends that the ALJ erred in according little weight to Dr. Breen's opinions. The ALJ did not fully describe why she rejected the objective evidence reported in Dr. Breen's assessment, but this is not reversible error. Dr. Breen's reported limited range of motion in the wake Plaintiff's surgery and recovery in 2012 and 2013. But this observation is consistent with the ALJ's determination that Plaintiff could not reach overhead, crawl, or climb ladders, ropes, or scaffolds. (AR 36).

### g. Dr. Riggert

Finally, Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Riggert. (Docket No. 12 at 11). The ALJ afforded little weight to Dr. Riggert's Physical Residual Function Capacity Statement because Dr Riggert lacked vocational training and failed to provide any support for her suggested limitations. (AR 46). It is not clear why Dr. Riggert would need vocational training to opine on specific functional limitations such as lifting and carrying weight, but any error in the reasoning is harmless. Dr. Riggert identified severe pain and limited range of motion in the right elbow and shoulder as Plaintiff's most significant clinical findings and

objective signs. (AR 885). She did not explain, however, why she believes that these symptoms would render Plaintiff unable to handle, finger, grasp, manipulate, or perform repetitive activities with his right hand. (AR 885). She also does not explain why Plaintiff could perform less than 50% of his job given these symptoms. (AR 886).

*2. Substantial Evidence in Determining Physical RFC*

Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff could lift or carry up to 2 pounds frequently, handle and finger objects frequently, or reach in front of his body with his right hand. (Docket No. 12 at 12–13). Plaintiff also contends that there is no support for an RFC higher than sedentary work. (Docket No. 13).

The Court disagrees. (AR 39–48). The ALJ's determination rests on a combination of opinions. For example, Dr. Kenny and Mr. Burke opined that Plaintiff could lift and carry up to 10 pounds with his right hand, (AR 758, 776), as did Drs. Hom and McGan.[9] But considering evidence from NP Sullivan regarding wasting and decreased strength and other evidence in the record indicating that Plaintiff struggled with mildly reduced muscle strength, limited range of movement, and continued pain in his right arm, the ALJ reduced the amount Plaintiff could lift to to two pounds and determined that Plaintiff could not reach overhead, crawl, or climb ladders, ropes, or scaffolds. And as to the finding that Plaintiff could finger, handle, and manipulate objects with his right hand, Dr. Alderson's records suggest Plaintiff's grip strength and muscle strength improved in late 2015 and early 2016. (AR 1172, 1173).

---

[9] To the extent Plaintiff challenges consideration of the opinions of Drs. McGan and Hom, neither of whom examined or treated Plaintiff (Docket No. 12 at 4), the ALJ only used these opinions as a starting point. The ALJ specifically referenced that the opinions were made early on, in July 2012 and January 2013, and that subsequent records suggested that Plaintiff's pain and functioning has worsened in the following years (AR 42–43).

### 3. Weight Given to Opinions in Determining Mental RFC

Plaintiff challenges the little weight afforded to the examinations and assessments of Dr. Cutler. (Docket No. 12 at 13–14). Dr. Cutler was not Plaintiff's treating physician, so his opinion was not entitled to controlling weight. (AR 46). The ALJ determined that Dr. Channell's opinion was more consistent with the record than Dr. Cutler's opinion. (AR 46). Substantial evidence supports this determination. Dr. Cutler consistently reported that Plaintiff was "markedly depressed" (AR 929, 933, 936, 940, 944, 996, 1181). But while treatment records with Ms. Jettinghoff and Ms. DeOliveira occasionally noted a depressed mood (AR 863, 866, 870, 872–74, 1094–98, 1101, 1109, 1115, 1130), they also note a euthymic mood at times. (AR 1102, 1124, 1138, 1141, 1144, 1156). Dr. Cutler also produced essentially the same report in each of his seven sessions and did not update them to include new information. For example, in his April 6, 2015, report, Dr. Cutler did not mention the racing thoughts, mood swings, and difficulties concentrating reported to Dr. Jettinghoff one month earlier. Because his records did not always align with the opinions of Dr. Jettinghoff and Dr. DeOliveira, Plaintiff's treating physicians, the record supports the ALJ's decision to accord limited weight to Dr. Cutler's opinion.

### 4. Literacy Determination

Plaintiff contends that substantial evidence does not support the ALJ's finding that he is literate and able to communicate in English. (Docket No. 12 at 15). "Illiteracy means the inability to read or write." 20 C.F.R. § 404.1564(b)(1). An ALJ considers an individual illiterate if he "cannot read or write a simple message such as instructions or inventory lists . . . ." *Id.* Plaintiff undoubtedly has poor English skills, but there is evidence in the record that Plaintiff can read and write simple messages, which is all the regulations require. For example, Plaintiff

testified that he "can speak a little," "understand a little," and "write the words but not a complete sentence" in English. (AR 71). He also stated that he can "understand" common signs and street names and can read a shopping list that contains "common" items such as "sugar, milk, bread, or something like that." (AR at 97). Plaintiff, moreover, became a United States citizen after taking the test for citizenship via naturalization, and as Plaintiff did not meet any exemption to take the test in a language other than English, this test would have required him to some basic understanding of the English language. (AR 37)

### 5. *Rejection of Plaintiff's Allegations*

Plaintiff argues that the ALJ erred in rejecting his complaints of pain and limitations. (Docket No. 12 at 19). The ALJ found these complaints inconsistent with recent treatment records, which suggested more stability in the intensity and severity of the impairments in his right arm and improving mood. (AR 39). As noted above, substantial evidence supports the ALJ's determination that Plaintiff's right arm and mood had improved over time. Thus, the Court cannot say that the ALJ erred in affording little weight to his subjective complaints of pain and limitations.

## Conclusion

For the reasons set forth above, Plaintiff's Motion to Reverse the Commissioner's Decision (Docket No. 12) is ***denied*** and Defendant's Motion to Affirm the Commissioner's Decision (Docket No. 13) is ***granted***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**